## Neely, Appellant, *v.* The Pennsylvania Company, etc., et al.

Argued October 9, 1942. ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ. ▮▮▮▮

*Henry Panfil,* of *Moore, Gossling & Panfil,* for appellant.

*Walter M. Phillips,* with him *Rowland C. Evans, Jr.,* and *Krusen, Evans & Shaw,* for appellee.

*Philip Sterling,* for interested party under Rule 61.

OPINION BY HIRT, J., March 10, 1943:

Plaintiff, William R. Neely, a duly licensed real estate broker in Philadelphia was engaged by defendant Pennsylvania Company to procure a purchaser for certain land held by it as trustee for sundry trusts. He secured a purchaser in one William J. Dixon and the Pennsylvania Company on September 9, 1941, entered into a sales agreement in writing with the purchaser providing for the conveyance of the premises, clear of encumbrances, for $30,000 in cash, settlement to be made within 60 days. Attached to the sales contract was the following agreement between the company and Neely: "In consideration of the execution of the foregoing Agreement of Sale, it is agreed between

the undersigned that a broker's commission of $1,500 shall be paid to William R. Neely, ...... If and when settlement is actually completed and title passed, otherwise no commission will be paid or demanded." On September 30, 1941, defendant Pennsylvania Company sold the premises and passed title to a client of William Goldstein, another real estate broker, for a consideration of $33,080. At the time of settlement, defendant paid Goldstein $827, being but one-half of a 5% commission on the sale. Goldstein claimed that he was entitled to the whole commission. After the settlement, Neely brought suit in assumpsit against the Pennsylvania Company claiming one-half of the commission under the Act of July 2, 1941, P. L. 227, amending §9 of the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS 2254. Because of this dispute the company, admitting its liability to pay commissions of 5%, petitioned for an interpleader. There being no objection, the company paid the fund in dispute into court and was discharged from further liability. Goldstein then filed his statement of claim. The issue between plaintiff Neely and Goldstein, the interpleaded claimant, was resolved in favor of Goldstein in the court below on the pleadings on questions of law in lieu of demurrer.

The above amendment extending the powers of the Orphan's Court provides: "That nothing in the foregoing shall be construed to relieve executors, administrators or trustees who have entered into an agreement of sale of real estate of a decedent or any other real estate held in trust in good faith, and who prior to the time fixed for settlement thereunder have received a higher offer for such real estate, from the payment of real estate broker or broker's commissions to the broker who had procured such agreement of sale, and in the event that more than one real estate broker is entitled to commissions for said agreements of sale, then such commissions shall be equally divided between or among

such real estate brokers; Provided further, That the total aggregate commissions paid shall in no event exceed five per cent of the gross consideration of the final sale."

We think the lower court misinterpreted the contract with Neely relating to his commissions, and construed the Act of 1941 too narrowly. This is remedial legislation to be liberally construed in the light of the occasion for the law, the mischief to be remedied and the object to be attained. Statutory Construction Act of May 28, 1937, P. L. 1019, §§51, 58. A fiduciary's first duty is to dispose of trust property for the best price obtainable and it is bound to ignore a prior agreement of sale if, before settlement, a higher price is offered for the trust property. Thus the best interests of the beneficiaries of the trust may rise above and nullify the obligation of a contract. Prior to the amendment, the real estate broker whose efforts, ingenuity and money resulted in a sales contract at an acceptable price, received nothing in return, if another purchaser, before settlement, offered to pay more. *Orr's Estate,* 283 Pa. 476, 129 A. 565; *Clark v. Prov. Tr. Co., Trustee,* 329 Pa. 421, 198 A. 36.

The sales agreement with Dixon was entered into eight days after the effective date of the 1941 amendment. Admittedly it was on a form used by the company for a number of years. The agreement was retrospective in that it reflected the law as it was prior to the amendment. This is indicated by the fact that although *Orr's Estate,* supra, nullified the contract in the event of a higher offer, the agreement specifically provides for a cancellation of the agreement and a return of the hand payment on that contingency. The purpose of the trustee in the agreement with Neely was only to disclaim liability to pay double commissions on a sale of the property. It was not aimed at nullifying the provisions of the amendment. The Pennsylvania

Company as trustee had no reason to prefer one real estate broker over another and the agreement does not indicate that intent; that was a matter of indifference to it, for its liability was limited in any event to the payment of a normal single commission of 5%. The indifference of the trustee is clearly indicated by the fact that it paid the money into court, removing itself as a party to the litigation and securing a discharge. We need not decide whether by paying the money into court there was a waiver by the trustee of literal compliance with the terms of the contract with Neely under the principle of *Skamoricus v. Konagiskie*, 318 Pa. 128, 177 A. 809. See Goodrich-Amram, §2307(b), and comment. Assuming that Goldstein may invoke any defense which would have been available to the trustee, the 1941 amendment governs the disposition of the fund. We may assume that the contract with Neely was made not only in the light of *Orr's Estate*, supra, but also in contemplation of the amendment for it is charged with knowledge of the enactment. So considered, the provision for the payment of a commission to Neely "if and when settlement is actually completed and title passed otherwise no commission will be paid or demanded," must be construed to relate to a release from liability only if the deal fell through from any one of a number of reasons other than the sale through another broker at a higher price. That contingency did not happen. Settlement was not made with Dixon only because of Goldstein's higher offer. The trustee did not lose a sale of the property. Settlement was actually completed and title passed and a real estate broker's commission was payable. The liability of the trustee was not increased; it was still limited to 5% of the sale price under the 1941 act.

The purpose of the amendment was to place brokers who have earned commissions in positions of equality by a division between them of the amount of a single

commission. It was enacted also in the best interests of the trust. A broker is more likely to exert himself to secure a purchaser on acceptable terms by the assurance that he will not be wholly barred from compensation by the chance that another broker may offer more. The 1941 amendment is applicable to the situation here presented.

Claimant Goldstein, under the heading of "Additional Matter", raised the question of law whether the 1941 Act applied to the facts as alleged in Neely's statement of claim. Both Neely and Goldstein joined issue on that question in the court below. We have concluded that the Act of 1941 is applicable and is controlling. It would be futile to remit the case for further proceedings, for there is no dispute as to the facts.

Accordingly, the order is reversed and the fund of $827 is awarded to plaintiff William H. Neely.