## Stokes' Estate

*James A. Nugent*, for accountants.
*Charles E. Hawkins*, for claimant.
*Daniel Krause*, for claimant.

Cox, J., March 13, 1946.—At the audit of the fifth account of Grace L. Stokes and The Union Trust Company of Pittsburgh, executors of the estate of Christopher L. Stokes, deceased, two claims for brokerage

commissions were presented, arising out of the sale of real estate, an asset of the estate, by the executors.

Samuel M. Apter, a licensed real estate broker, trading as Apter Agency, represented Saul H. Weissman, the purchaser. The Apter Agency has been paid a commission of $670 by the executors and claims a balance of commission of $670.

Apter Agency and the executors are in agreement that the total commission to be paid shall be $1,340, which is arrived at by allowing a commission of five percent on the first $10,000 of the purchase price of $38,000, and three percent on the balance. The executors have withheld one half of the commission, or $670.

John F. Nugent, trading as Nugent Insurance Agency, claims a commission of $950 from the proceeds of the sale. Nugent Insurance Agency bases its claim on the Orphans' Court Act of June 7, 1917, P. L. 363, as amended by the Act of July 2, 1941, P. L. 227. The contention of Nugent Insurance Agency is that the act fixes the rate of commission at five percent of the purchase price, and that the Nugent Insurance Agency is entitled to one half of the commission, or $950, the other half to go to Apter Agency.

The pertinent provisions of the Act of 1917, P. L. 363, as amended by the Act of 1941, P. L. 227, are as follows:

"Section 9(p) . . . And such jurisdiction shall be exercised under the limitations and in the manner provided by law: Provided, however, That nothing in the foregoing shall be construed to relieve executors, administrators or trustees who have entered into an agreement of sale of real estate of a decedent or any other real estate held in trust in good faith, and who prior to the time fixed for settlement thereunder have received a higher offer for such real estate, from the payment of real estate broker or broker's commissions to the broker who had procured such agreement of sale,

and in the event that more than one real estate broker is entitled to commissions for said agreements of sale, then such commissions shall be equally divided between or among such real estate brokers: Provided further, That the total aggregate commissions paid shall in no event exceed five percent of the gross consideration of the final sale."

The facts surrounding the sale of the property are in every material respect agreed to by the contending claimants and are substantially as follows:

The executors had listed the property at $35,000. Both claimants had clients who were interested in purchasing the property but would not meet the asking price.

On June 21, 1945, the Apter Agency offered to purchase property for their client, Alex. Seltman, for $32,500, accompanying their offer with hand money. This offer was refused.

On July 23, 1945, the Apter Agency on behalf of Saul H. Weissman offered $35,000 for the property. Agreements of sale were executed by both parties.

In August 1945 the Nugent Insurance Agency offered $36,000 on behalf of their client, Dr. Frederick Highberger. No agreement was signed, but the Apter Agency was informed of the higher offer.

On August 6, 1945, the Apter Agency increased their offer to $36,500 and agreements were signed.

On August 30, 1945, the Nugent Insurance Agency offered $37,000 on behalf of Thomas W. Nugent, and agreements were signed.

In September 1945 the Apter Agency offered $38,000. Agreements were signed on September 14, 1945, and a deed was delivered. At the time of the offer, which was 10 days to two weeks before the signing of the agreement and the delivery of the deed, the Nugent Insurance Agency was advised of the increased offer, but made no counter offer.

It is to be noted that both claimants on behalf of their clients secured executed agreements with the executors. Although the Apter Agency secured the first executed agreement and eventually secured for its client, Saul H. Weissman, the conveyance of the property, the signed agreement secured by the Nugent Insurance Agency for its client, Thomas W. Nugent, is interposed.

All offers which did not result in signed agreements are to be disregarded. "In general, under the act a broker is entitled to share in the commission if the trustee has entered into an agreement of sale with the buyer procured by such broker. A mere offer or bid for the property is not enough, unless accepted by the trustee": Coyle's Est., 156 Pa. Superior Ct. 185. Acceptance must be consummated by a written agreement executed by both parties, parol acceptance not being sufficient to meet the requirements of the act.

The Apter Agency has taken the position that it is entitled to the entire commission, but, if there is to be a division of commission, the commission payable to the Nugent Insurance Agency should be based on $3,000, the difference between the first offer submitted, $35,000, and the purchase price of $38,000. This position is untenable. ". . . Brokers under the act are paid equally but only for the resulting sale; the commission is not divided on quantum meruit or on the basis of the comparative efforts of the brokers in securing buyers": Coyle's Estate, supra.

The purpose of the act was to encourage the interest of real estate brokers in the sale of property in the hands of fiduciaries. Real estate brokers who come within the provision of the act divide the commission equally. To hold in this case that the Nugent Insurance Agency would only be entitled to commission on the difference between the price of the first offer and the price of the sale would nullify the purpose of the act.

The position taken by the Nugent Insurance Agency, that the total commission to be allowed is fixed at five percent of the purchase price paid by the Act of 1917, P. L. 363, as amended by the Act of 1941, P. L. 227, is incorrect. The pertinent section of the act states: "Provided further, That the total aggregate commissions paid shall in no event *exceed* five per cent of the gross consideration of the final sale." This language is simple and should need no explanation or interpretation. It establishes a ceiling or maximum commission, but does not make the payment of this rate mandatory.

At the very beginning of the negotiations by the Nugent Insurance Agency on behalf of its various clients it knew that the executors were willing to pay a commission of five percent on the first $10,000 of the purchase price and three percent on the balance, and no commission determined in any other manner. In fact, the Nugent Insurance Agency signed an agreement with the executors fixing its commission at this rate at the time it negotiated with the executors for the sale of the property to its client, Dr. Frederick Highberger. At no time during the subsequent course of its dealing with the executors was this rate of commission changed, and the Nugent Insurance Agency is estopped from now claiming a commission based on any other rate. The Apter Agency has agreed that the commission determined at this rate is proper.

On the admitted facts in this case, it comes clearly within the language and purpose of the act. Both claimants have qualified under the requirements of the act and both are entitled to an equal division of the commission. The Apter Agency has been paid one half of the commission, or $670, by the executors, and its claim for additional commission is disallowed.

The Nugent Insurance Agency is allowed one half of the total commission, in the amount of $670.